1
2
3
4
5

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS CARRASQUILLA, et al., | Case No. 1:15-cv-00740-BAM |
| Plaintiffs, | ORDER REGARDING DEFENDANT COUNTY OF TULARE'S MOTION FOR SUMMARY JUDGMENT |
| vs. | (Doc. 39) |
| COUNTY OF TULARE, et al., | |
| Defendants. | |
| _____/ | |

Plaintiffs Carlos Carrasquilla and Alba Lyda Carrasquilla ("Plaintiffs") filed this civil rights action pursuant to 42 U.S.C. § 1983 against Defendants County of Tulare ("Tulare County") and Stacey Zeller Johnson ("Defendant Zeller") on May 13, 2015.[1] (Doc. 1). The parties consented to the jurisdiction of the United States Magistrate Judge. (Docs. 12, 13, 53).

Presently before the Court is a motion for summary judgment brought by Defendant Tulare County. (Docs. 37, 39, 40). Plaintiffs' operative claims against Tulare County include: (1) a *Monell* claim asserting constitutional deficiencies in Tulare County's policies, practices and customs related to the housing of protective custody inmates and detainees charged with child molestation crimes, and the failure to properly investigate the subject incident and discipline its employee; and (2) a Fourteenth Amendment claim by Plaintiff's wife, Alba Carrasquilla, for Tulare County's allegedly unconstitutional interference with her marital relationship with her husband, Plaintiff Carlos

---

[1] Defendants Anderson, Garcia, Vargas and Salgado, the remaining defendants, were dismissed from this action with prejudice on November 22, 2016. (Doc. 45).

Carrasquilla.  Plaintiffs opposed the motion for summary judgment on November 22, 2016, and Tulare County replied on December 2, 2016.  (Docs. 46, 51).  The Court heard oral argument on December 15, 2016.  Counsel Brian Bush appeared by telephone on behalf of Plaintiffs Carlos Carrasquilla and Alba Lyda Carrasquilla.  Counsel Judith Chapman appeared by telephone on behalf of Defendant Tulare County.  Counsel William Bruce and Ravi Patel appeared by telephone on behalf of Defendant Zeller.

Having considered the moving, opposition and reply papers, along with the parties' arguments, Tulare County's motion for summary judgment shall be GRANTED.

## I.       Motion for Summary Judgment

### A.       Timeliness of Motion and Request for Sanctions

On November 5, 2015, the Court issued a Scheduling Conference Order, which set the pre-trial motion filing deadline as October 26, 2106.  (Doc. 17).  On October 26, 2016, Tulare County filed its purported motion for summary judgment.  The motion totaled more than 120 pages, the majority of which were blank.  (Doc. 37).  The following day, on October 27, 2016, Tulare County filed an amended motion for summary judgment, along with a declaration from Tulare County's counsel explaining the technical issues with the electronic filing of the documents and the efforts to rectify the issues.  (Docs. 39-41).  Despite the explanation, Plaintiffs now ask the Court to issue sanctions for the late-filed motion, up to and including denial of the motion on procedural grounds.  (Doc. 46, p. 26).

Local Rule 110 provides that "[f]ailure . . . of a party to comply with these Rules or with any order of the Court may be grounds for imposition by the Court of any and all sanctions . . . within the inherent power of the Court."  District courts have the inherent power to control their dockets and "[i]n the exercise of that power they may impose sanctions . . . ."  *Thompson v. Housing Auth.*, 782 F.2d 829, 831 (9th Cir. 1986).

In this instance, the Court does not find the imposition of sanctions appropriate or warranted for several reasons.  First, there is no evidence of any willful failure to timely file the motion for summary judgment in violation of the Court's order.  Tulare County attempted to file the motion in a timely manner, but the electronic filing was unsuccessful.  Tulare County rectified the technical failure the following day (and less than twenty-four hours later).  (Docs. 37, 39, 40).  Second, Plaintiffs have

demonstrated no prejudice from the one-day delay in service of the motion for summary judgment.  As admitted, Plaintiffs have opposed Tulare County's motion on the merits.  Third, and finally, the Court finds that the public policy favoring disposition of cases on their merits weighs against the imposition of sanctions, particularly denial of the motion on procedural grounds.  For these reasons, Plaintiffs' request for the imposition of sanctions due to the late-filed motion for summary judgment is HEREBY DENIED.

**B.     Summary Judgment – Legal Standard**

Summary judgment is appropriate when the pleadings, disclosure materials, discovery, and any affidavits provided establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that may affect the outcome of the case under the applicable law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The exact nature of this responsibility, however, varies depending on whether the issue on which summary judgment is sought is one in which the movant or the nonmoving party carries the ultimate burden of proof. *See Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). If the movant will have the burden of proof at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Id.* (citing *Celotex*, 477 U.S. at 323). In contrast, if the nonmoving party will have the burden of proof at trial, "the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Id.*

If the movant satisfies its initial burden, the nonmoving party must go beyond the allegations in its pleadings to "show a genuine issue of material fact by presenting affirmative evidence from which a jury could find in [its] favor." *FTC v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009) (emphasis omitted).  "[B]ald assertions or a mere scintilla of evidence" will not suffice in this regard. *Id.* at 929;

*see also Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56[], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.") (citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

In resolving a summary judgment motion, "the court does not make credibility determinations or weigh conflicting evidence." *Soremekun*, 509 F.3d at 984. Instead, "[t]he evidence of the [nonmoving party] is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Anderson*, 477 U.S. at 255. Inferences, however, are not drawn out of the air; the nonmoving party must produce a factual predicate from which the inference may reasonably be drawn. *See Richards v. Nielsen Freight Lines*, 602 F.Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

In arriving at the findings and rulings in this opinion, the Court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this Court did not consider the argument, document, paper, or objection. This Court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

## C.    Evidentiary Objections

The parties have raised numerous objections to the evidence submitted in connection with the motion for summary judgment. As noted above, not every objection will be addressed by the Court individually, as doing so is neither necessary nor the practice of this Court in the summary judgment context. For the sake of clarity and to the extent it is appropriate, certain individual objections have been addressed below by the Court. Other objections are dealt with here in general terms.

The hearsay objections are overruled. Declarations which contain hearsay are admissible for summary judgment purposes if they can be presented in admissible form at trial. *Fonseca v. Sysco Food Servs. of Arizona, Inc.*, 374 F.3d 840, 846 (9th Cir. 2004). Furthermore, "[i]f the significance of

an out-of-court statement lies in the fact that the statement was made and not in the truth of the matter asserted, then the statement is not hearsay." *Calmat Co. v. U.S. Dep't of Labor*, 364 F.3d 1117, 1124 (9th Cir. 2004). At this stage, the Court does not find the hearsay objections raised by the parties to be preclusive of the evidence submitted.

Further, given the Court's duty to determine whether there exists a genuine dispute as to any material fact, objections to evidence as irrelevant are both unnecessary and unhelpful. *E.g., Carden v. Chenega Sec. & Protection Servs., LLC*, No. CIV 2:09–1799 WBS CMK, 2011 WL 1807384, at *3 (E.D. Cal. May 10, 2011); *Arias v. McHugh*, No. CIV 2:09–690 WBS GGH, 2010 WL 2511175, at *6 (E.D. Cal. Jun. 17, 2010); *Burch v. Regents of Univ. of California*, 433 F.Supp.2d 1110, 1120 (E.D. Cal. 2006)).

### D.    Declaration of Cory S. Jones

Tulare County submitted the declaration of Cory S. Jones in support of its motion for summary judgment.   Plaintiffs argue that portions of this declaration ought to be excluded from evidence because it is a "sham declaration" and because certain of the information was not disclosed in discovery.   Specifically, Plaintiffs object to paragraphs 27 through 33 of Mr. Jones' declaration, which relate to the classification and offenses of those inmates housed in the cell with Mr. Carrasquilla, including those inmates who assaulted or may have assaulted Mr. Carrasquilla.   (Doc. 40, Ex. 2, Declaration of Cory S. Jones, ¶¶ 27-33).

Sham Affidavit Rule

 "The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991). This is because "if a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Id.* at 266 (quoting *Foster v. Arcata Assocs., Inc.*, 772 F.2d 1453, 1462 (9th Cir.1985)).

Plaintiffs argue that Tulare County is attempting to create an issue of fact via Mr. Jones' declaration.   Plaintiffs' argument concerning a "sham affidavit" appears to be misdirected.   It is unclear to the Court why Plaintiffs would object to any evidence that purportedly creates an issue of

fact.  For that reason alone, the Court declines to find that Mr. Jones' declaration is a "sham affidavit."

Disclosure of Evidence

Plaintiffs also argue that Federal Rule of Civil Procedure 37(c) mandates exclusion of those portions of Mr. Jones' declaration regarding inmate records because Tulare County failed to disclose this information in discovery.

Rule 26(a) of the Federal Rules of Civil Procedure requires parties to disclose a copy or description of all documents that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses.  Fed. R. Civ. P. 26(a)(1)(A)(ii).  Parties also are required to supplement any incomplete or incorrect disclosures in a timely manner.  Fed. R. Civ. P. 26(e)(1)(A).

Rule 37(c)(1) provides that if a party fails to provide information as required by Rule 26(a) or (e), the party is not allowed to use that information at trial, unless the failure was substantially justified or is harmless.  Fed. R. Civ. P. 37(c)(1).  Generally, this rule acts as a "self-executing. . .and automatic sanction to provide a strong inducement for disclosure of material." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) (citations and internal quotation marks omitted).  Nonetheless, the Ninth Circuit gives "particularly wide latitude to the district court's discretion to issue sanctions under Rule 37(c)(1)." *Id.*

Plaintiffs argue that Tulare County did not disclose any information about the charges or in-custody behavioral history of the 15 other inmates housed in Mr. Carrasquilla's cell.  Plaintiffs also contend that aside from information about the charges of a couple of inmates, no other information about the charges of the other inmates was provided during the course of Mr. Jones' deposition, despite his claim to have reviewed the files.  Plaintiffs further contend that Tulare County did not supplement its disclosures to support Mr. Jones' declaration and never produced any such information.  Plaintiffs believe that Tulare County is "sandbagging" them by not producing the documents.  (Doc. 46-1, Declaration of Hermez Moreno ("Hermez Decl."), ¶¶ 13-19; Doc. 48-1, Exs. 12 and 13).

Tulare County counters that Plaintiffs never requested the charges or in-custody behavioral history of the 15 other inmates housed in Mr. Carrasquilla's cell during the course of discovery.  Tulare County further contends that it identified documents concerning the charges of the other inmates in the cell, inmate Soliz's booking jacket and Carrasquilla's booking jacket in its initial

6

disclosures.  Tulare County also provided supplemental disclosures on August 22, 2016, identifying the booking/classification records for inmates housed with Plaintiff at the time of the incident with the inmate names and personal information redacted and records pertaining to fights that occurred in the jail cell where the incident occurred with names and identifying information redacted.  Plaintiffs reportedly failed to make a request for any of these disclosed records.  (Doc. 51-5, Declaration of Judy Chapman ("Chapman Decl."), ¶ 4 and Ex. B; Doc. 48-1, Plaintiffs' Exs. 13 and 14). Plaintiffs also were provided with contact information concerning the other inmates in the cell with Mr. Carrasquilla pursuant to a protective order, which Plaintiffs admit.  (Doc. 51-5, Chapman Decl., ¶ 5; Doc. 46-1, Hermez Decl., ¶ 15).  Additionally, the deposition notice for Mr. Jones did not request that the County produce a person with knowledge of the charges or personal information of the other inmates and did not request any documents pertaining to the other inmates in the cell.  (Doc. 51-5, Chapman Decl., ¶ 6 and Ex. C).

Having considered Tulare County's initial and supplemental disclosures, the inmate contact information provided by Tulare County, along with the apparent failure of Plaintiffs' counsel to submit formal discovery requests for records pertaining to the 15 inmates housed with Mr. Carrasquilla, Rule 37(c) sanctions are not warranted and the pertinent portions of Mr. Jones' declaration shall not be excluded.[2]

**E.    Plaintiffs' Expert Roger Clark**

Tulare County objects to the testimony and evidence of Roger Clark, arguing that Plaintiffs fail to provide sufficient evidence to demonstrate that his opinions are admissible pursuant to Federal Rule of Evidence 702.  In particular, Tulare County objects that Mr. Clark lacks specialized knowledge to render an expert opinion, the opinion is not based on sufficient facts, and the opinion is not supported by reliable methods.  (Doc. 51-3, pp. 3-9).

Rule 702 states that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if (a) the experts' . . . specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in

---

[2] Nonetheless, the Court notes that Cory Jones' declaration is only marginally relevant to the Court's analysis, *supra*, and the facts regarding the other inmates' charges is not determinative of this motion.

issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.  The "trial judge must ensure that any and all scientific testimony [or any other expert testimony] or evidence admitted is not only relevant, but reliable." *Daubert v. Merrill Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993); *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999) (extending *Daubert's* requirements of relevance and reliability to non-scientific expert testimony). That said, "a trial court not only has broad latitude in determining whether an expert's testimony is reliable, but also in deciding *how* to determine the testimony's reliability." *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004) (internal citations omitted) (emphasis in original).

Here, Plaintiffs' expert, Roger Clark, based his opinions on his training, professional experience and education and the documents he reviewed.  (Doc. 48-1, Ex. 11, pp. 1-16).  Mr. Clark's experience and training is extensive.  Mr. Clark worked for the Los Angeles County Sheriff's Department for more than 27 years, including work in custody, patrol and as both a Sergeant and a Lieutenant.  Since 1993, Mr. Clark has served as an expert in jail and police procedures, consulting in approximately 1,450 cases.  Further, in preparing his report, Mr. Clark reviewed the complaint, Tulare County's answers, the deposition transcripts of Lieutenant Cory Jones, Mrs. Carrasquilla, Deputy Roman Garcia, Deputy Maxwell Vargas, Mr. Carrasquilla, Defendant Zeller and Sergeant Santo Salgado, booking documents, photographs, incident reports, jail policy and procedures, minimum standards for local detention facilities, Titles 15 and 24, and other sources.  (Doc. 48-1, Ex. 11, pp. 2, 11-16 and Ex. A).

The Court finds that Mr. Clark's opinion is based on his training, experience and review of relevant documents.  Accordingly, Tulare County's objection to his expert opinion is overruled.

///

///

///

## II.      Undisputed and Disputed Material Facts[3]

### 1.   Jail Incident

In July 2014, Plaintiff Carlos Carrasquilla was arrested pursuant to a warrant on charges under California Penal Code section 288.   (Doc. 37-2, Defendant's Statement of Facts Not Legitimately in Dispute ("UMF") 1).   Because his charges related to child molestation, Mr. Carrasquilla was housed in the jail's "protective custody" unit with approximately 15 other protective custody inmates at the Tulare County Main Jail.   UMF 2.

In the protective custody unit, inmates regularly communicate with guards and administrators through written notes placed on the cell bars known as "kites."   UMF 3.   On or about July 20, 2014, Plaintiff's cellmate Soliz wrote a kite identifying himself—by name and inmate identification number—as Mr. Carrasquilla.   UMF 4.   The kite, purporting to be from Mr. Carrasquilla, requested the identification of the charges against Mr. Carrasquilla.   UMF 6.   Defendant Deputy Stacey Zeller (Johnson) collected the kite.   UMF 7.   Deputy Zeller provided a written response to the kite that indicated that Mr. Carrasquilla was being held on a charge related to child molestation.   UMF 8. Deputy Zeller's written response was not given to Mr. Carrasquilla.   UMF 9.   Soon after Deputy Zeller's written response to the kite, Mr. Carrasquilla was confronted by inmate Soliz and inmate Scott, and then attacked by inmates Soliz, Scott and AJ.   UMF 10.   Deputy Zeller responded and Mr. Carrasquilla was removed from his cell within a minute from the start of the assault, and taken to the infirmary for medical attention.   UMF 12.   Mr. Carrasquilla did not return to the cell and had no further contact with the inmates in his pod.   UMF 13.   No further assaults occurred.   UMF 14.   Inmate Soliz was criminally prosecuted by the Tulare County District Attorney for the assault.   UMF 15.

### 2.   Tulare County Policies, Practices and Customs

It is common knowledge among jailers that the reality of the nature of the jail population is that all inmates who are housed with other inmates have the potential to engage in lawlessness and to pose a substantial risk of harm to other inmates.   UMF 16.   It is common knowledge that assaults can and

---

[3]      The facts detailed here are taken from Tulare County's moving papers, Plaintiffs' opposition and Tulare County's reply, and construed in the light most favorable to Plaintiffs. *Horphag Research Ltd. v. Garcia*, 475 F.3d 1029, 1035 (9th Cir. 2007).   Material disputed and undisputed facts are discussed in detail where relevant to the Court's analysis of a specific cause of action.   Unless otherwise noted, the parties' objections to evidence are overruled.

do occur among the jail population, and that it is impossible to determine if or when all assaults may occur.  UMF 17.  Tulare County has adopted a classification system that seeks to classify and house inmates in cells that provide for inmate safety and security based on objective criteria obtained through an inmate questionnaire, a classification interview, review of an inmate's in custody behavior and discipline, and review of the nature and extent of an inmate's prior criminal history.  UMF 18. While an inmate's charges are one factor among many considered by the classification officer, no one factor controls an individual housing assignment.  UMF 19.  The Tulare County Sheriff's Department classifies inmates by general population (inmates who can safely be housed with other inmates), protective custody inmates (who need to be protected from identified enemies or categories of inmates that pose a risk to the inmate safety) and administrative segregation (inmates who are determined to be violent and thus pose a substantial risk of harm to other inmates), depending on the information available during classification.  UMF 20.

Tulare County's inmate classification policy and procedures, NO. B-200, provides, in relevant part, as follows:

**GENERAL:**
...
> i)  The purpose of this policy is to establish and maintain a systematic and consistent method of classifying inmates in custody for placement into specific housing locations . . .

…
> iv)  Inmate classification will be administered consistently and without discrimination against any individual based upon their sex, race, color, creed, cultural background, physical handicap or national origin.

…
> vi)  The classification plan will provide separate and secure housing for the administrative segregation of inmates and does not involve any deprivation of privileges more than necessary to maintain the safety of staff, inmates, security of the jail and public safety.

**PROCEDURES:**

**I.      Classification Officer's Responsibilities**
...

E. The initial custody assessment recommendation derived from the classification questionnaire interview, in combination with other specific documented information and following list of objective criteria shall be utilized in making decisions relating to the inmate's housing assignment and supervision requirements.  The inmate will sign the

detention division classification form.

**F.**      Considerations for Classification Assessment:

1.      Severity of current charges.
2.      Serious offense history.
3.      Three Strikes criteria.
4.      Escape history.
5.      Number of disciplinary convictions.
6.      Most serious disciplinary convictions.
7.      Prior felony convictions.
8.      History of alcohol and drug abuse.
9.      Suicide tendency.
10.     Gang Status – active or non-active – gang member.

…

H. The classification officer will review the inmate's criminal history file (Rap Sheet), in the JMS, and all prior bookings before assigning the inmate to a housing unit . . . .

…

**V.      Definition of Classification Terms:**

A. Administrative Segregation – The physical separation of inmates from the general population in order to provide and maintain the safety of inmates, staff, security of the jail and public safety.  These inmates have been identified as being escape risks, qualify for protective custody, assaultive towards staff or other inmates or who by the nature of their behavior have demonstrate their potential for violence or violating facility rules.

…

X.  Protective Custody Inmate – An inmate who by the nature of their charges, behavior or life style must be protected from other inmates.

(Doc. 40, Ex. 2C to Declaration of Cory S. Jones).   Additionally, Tulare County's policy and procedures regarding Administrative Segregation/Protective Custody, NO. B-205, provides:

**GENERAL:**

...

Protective Custody – If it is determined that the inmate is likely to be assaulted by other inmates due to his prior action on the street, prior action while in custody, or due to the nature of the crime committed, the inmate will be placed into protective custody, as deemed necessary to obtain the objective of protecting the welfare of the inmates and staff.

(*Id.*).

At the Tulare County Main Jail, vulnerable inmates may be housed in a single segregated cell

or housed with multiple inmates depending on the information available.  UMF 21.  If it is determined that a protective custody inmate is suitable to be placed with other inmates, the classification officer identifies a prospective cell and considers the information available concerning the other inmates in the cell to determine whether any inmate or inmates in the cell pose a risk of harm.  UMF 22.  If an inmate or inmates poses a risk of harm to the inmate, the classification officer will search for another appropriate cell, move any inmate who poses a threat, or transfer to the inmate to one of the other two facilities that house protective custody inmates.  UMF 23.  Inmates who are determined to have a propensity to commit assaults are not housed in a protective custody pod with other inmates.  UMF 25.

Protective custody inmates with Penal Code § 288 charges are not automatically segregated from other protective custody inmates unless other factors exist to suggest they cannot be safely housed in a pod because segregated cells are disfavored by inmates, do not promote socialization, lead to isolation, can result in depression, and often result in an increased rate of suicide.  UMF 26.  Tulare County does not subcategorize sex offenders into protective custody pods.  UMF 27.

Tulare County has increased the level of supervision in the protective custody unit in the main jail by housing inmates in smaller protective custody pods within ear shot of the floor deputy, by providing for visual observation from the bull pen of the corridor, shower area, and shower, and by performing floor checks that exceed state regulations and by training staff to respond to inmate disturbances immediately.  UMF 31.  Inmate assaults are serious infractions that result in the imposition of discipline up to and including criminal prosecutions and depending on the circumstances surrounding the assaults.  UMF 32. The State of California has not identified any issues or concerns regarding the County's inmate classification policies, practices, and customs during any audit.  UMF 33.  Physical assaults against sex offenders due to their status are rare.  UMF 34.  The County understands that at least 12 other California Counties do not routinely sub-segregate sex offenders from other sex offenders.  UMF 35.

Tulare County also has developed policies and procedures designed to maintain inmate confidentiality in an attempt to minimize the risk that an inmate's confidential information will be released to another inmate.  UMF 29.  Deputies are trained that the improper release of confidential information to third parties may and will result in discipline up to and including termination.  UMF 30.

It is the policy, practice and custom to discipline employees and officers who have been confirmed to have violated Tulare County Sheriff's policies or rules by issuing a memorandum of counseling, imposing a suspension without pay, demoting the employee, or firing an employee depending on the severity of the circumstances surrounding the infraction.  UMF 36.

### 3.  Inmates Housed with Mr. Carrasquilla

Five of Mr. Carrasquilla's cellmates were sex offenders or charged with a sex offense, three of which involved sex offenses against a minor.  UMF 38.  Of the five other sex offenders housed with Mr. Carrasquilla, none expressed concerns for their safety or otherwise requested to be moved. UMF 39.  Inmate Scott, who was possibly identified as one of the inmates who assaulted Mr. Carrasquilla, had a prior conviction for Penal Code § 288, had no history of gang affiliation, and had no history of inmate assaults. UMF 40.   Inmate Soliz was identified as passive and was in protective custody because he was identified as a person likely to be a victim; he had no known history of any gang affiliation, and had no prior charges or discipline involving assaults for the five years preceding the incident.  UMF 41.  Sanchez, the only inmate with matching initials with AJ was a gang drop out; however; he had no known history of in custody assaults and no documented animosity toward sex offenders.   UMF 42.   The only inmate that was in the protective custody pod who had charges involving murder, A. Gonzales, was not involved in the assault. UMF 43.

### 4.  Plaintiffs' Additional Facts

Tulare County admits that it knew certain inmates, due to their respective unique charges or custodial status, required that the Department take reasonable steps to protect those inmates from harm.  (Doc. 51-1, p. 29, Plaintiff's Material Disputed Fact ("MDF") 44).  For example, Tulare County knew that they needed to protect law enforcement, gang members, and gang drop outs from other people in the jail who may tend to want to do them harm.  MDF 45.  Inmates with sex charges against minors are to be protected against general population inmates in Tulare County jails because it is "well-known knowledge" to the policymakers in Tulare County that if it is found out that [an inmate] is a child molester or charged with such a crime, it is a pretty good chance he will be assaulted by said inmates; Odds are pretty good he will be beaten.  It is more than likely he will be beaten.  For example, active gang members are ordered to place a hit on inmates with such charges.  MDF 46.

Inmates in general population include people accused of or involved in murder, attempted murder, violent crimes, gang members, people who have assaulted police officers.  MDF 47.   As applied to the general population, at the bottom of this hierarchy and most subject to physical abuse and beatings in the general population, would be the child molesters.  MDF 48.

Tulare County admits that Plaintiff was classified as protective custody because Tulare County knew that people charged with molestation are more likely than not to be subjected to physical abuse from the general population, active gang members, and from any other people in the jail who may tend to want to do them harm.  MDF 49.  However, Plaintiff was housed with a suspected murderer and several gang dropouts.  MDF 50.  Tulare County admits that Plaintiff's charges placed him at risk of serious harm if the information was released to any inmate in the general population, which includes murderers, ex-gang members and violent criminals.  Tulare County also admits Defendant Zeller knew that disclosure of such information to any other inmate may expose Plaintiff to a risk of harm and that doing so was against Tulare County policy.  MDF 52.

It is undisputed that Defendant Zeller was aware of County Policy 607.1, which was paraphrased during her deposition as stating:  "It is the policy of this office to make every reasonable effort to protect inmates from personal abuse, corporal punishment, personal injury, harassment by other inmates or staff" and that "Staff shall take reasonable action to safeguard venerable inmates from others and shall use classification policies and procedures to make housing decisions that will provide for inmate safety."  MDF 53.  Tulare County admits that Defendant Zeller knew that a person with a sex charge, particularly against a minor, is considered to be a "vulnerable" inmate pursuant to policy.  MDF 53.  Defendant Zeller, as a deputy known by inmates like Dale Watson to provide them with kite-requested "information" about other inmates, responded to the kite, providing Plaintiff's charges to them.  MDF 54.  That such information was provided by Defendant Zeller to the inmates in Plaintiff's cell was one of the most serious breaches of jailhouse security.  MDF 59.

Plaintiff was beaten severely, kicked and punched in the head. He received little if any medical care. He was transported to L.A. County three days later. Upon arrival at the Men's Central Jail in Los Angeles on July 23, 2014, it was determined Plaintiff had suffered extensive injuries to his head. These included a comminuted right maxillary sinus acute fracture, right inferior orbital floor fracture,

comminuted right zygomatic arch fracture, right and left nasal bone fracture with nasal septal deviation to the right, right lateral orbital wall fracture and inferior frontal sinus depressed fracture. He was immediately prepared for surgery due to the extensive nature of the sinus fracture. This operation, an open reduction and internal fixation of the frontal sinus fracture involved the surgical attachment of a metal plate with screws to stabilize the facial features.  MDF 55.

### 5.  Expert Opinion of Roger Clark

In his report, Plaintiffs' expert, Roger Clark, concluded that "Mr. Carrasquilla was vulnerable to violence, due to the nature of his charges, and the Tulare County Sheriff's Department had policies in place to protect him, but in my opinion, failed to follow their own policy."  (Doc. 48-1, Plaintiffs' Ex. 11, Expert Report, p. 7). According to Plaintiffs' expert, persons charged with sex-related offenses, including those with charges under Penal Code § 288, "must be segregated for their safety and/or placed in protective custody or increased level of supervision due to the known risks of injury and harm to inmates with such charges."  (*Id*. at p. 9).  Plaintiffs' expert further opined that under the facts of this case, "Mr. Carrasquilla should have been conscientiously classified (and treated) as a totally segregated inmate and watched and housed accordingly – including in a solo cell environment." (*Id*.).  Plaintiffs' expert further opined that "given Mr. Carrasquilla's charges, TCSD policy and common sense dictate[ ] that he be segregated and be under closer watch.  Accordingly, this incident was an avoidable failure on the part of all identified defendants."  (*Id*. at p. 10).

Additionally, Plaintiffs' expert testified that while sex offenders typically should be housed in individual single cells, they could be housed in a multi-inmate setting if other precautions are taken, depending upon the procedures and design. (Doc. 48-1, Plaintiffs' Ex. 10, Deposition of Roger Clark, p. 56:12-57:8).  Plaintiffs' expert did not consider Mr. Carrasquilla's housing placement to be a protective custody setting and instead opined that Mr. Carrasquilla's segregated placement did not meet the need of protective custody.  (*Id*. at p. 97:13-16; 103:5-8).

### III.    Analysis

#### A.  *Monell* Claim

A local governmental entity is liable under § 1983 when "action pursuant to official municipal policy of some nature cause[s] a constitutional tort." *Monell v. Department of Social Servs.*, 436 U.S.

658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978); *see also City of Canton v. Harris*, 489 U.S. 378, 389, 109 S.Ct. 1197, 1205, 103 L.Ed.2d 412 (1989). A local governmental entity also may be liable if it has a policy of inaction and such inaction amounts to a failure to protect constitutional rights. *City of Canton*, 489 U.S. at 388, 109 S.Ct. at 1204.

To impose liability on a local governmental entity, a plaintiff must establish: (1) that he possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy "amounts to deliberate indifference" to the plaintiff's constitutional right; and (4) that the policy is the "moving force behind the constitutional violation." *City of Canton*, 489 U.S. at 389–91, 109 S.Ct. at 1205–06.

The parties do not appear to dispute that Mr. Carrasquilla possessed a constitutional right of which he was deprived or that Tulare County had a classification/housing policy.  Rather, the parties' arguments are confined to the remaining elements of a *Monell* claim, namely whether Tulare County had a policy which amounted to deliberate indifference to Mr. Carrasquilla's constitutional right and whether that policy was the moving force behind the alleged constitutional violation.

<u>Causal Link Between Assault and Tulare County's Policies</u>

The "first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton*, 489 U.S. at 385, 109 S.Ct. at 1203.  A plaintiff is required to show that the policy at issue is the "moving force behind the constitutional violation." *Id*. at 389, 109 S.Ct. 1205. To demonstrate that a policy was the moving force, a plaintiff need only show that the defendant's policy was "closely related to the ultimate injury." *Id.* at 391.  Further, the custom or policy must be a "deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Castro v. County of Los Angeles*, 833 F.3d 1060, 1075 (9th Cir. 2016) (citation omitted) (en banc).

To meet this causation requirement, the plaintiff must establish both causation-in-fact and proximate causation. *Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008).  A policy is a proximate cause if intervening actions were within the scope of the original risk and therefore

foreseeable.  *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 837 (9th Cir. 1996) ("Pointing to a municipal policy action or inaction as a 'but-for' cause is not enough to prove a causal connection under *Monell.*").  Traditional tort law dictates that an abnormal or unforeseen action that intervenes to break the chain of proximate causality applies in section 1983 actions.  *Id.*  A defendant's conduct is not the proximate cause of the plaintiff's injury "if another cause intervenes and supersedes his liability for the subsequent events." *White v. Roper*, 901 F.2d 1501, 1506 (9th Cir. 1990).  However, "foreseeable intervening causes...will not supersede the defendant's responsibility." *White*, 901 F.2d at 1506 (citation omitted). "If reasonable persons could differ [over the question of foreseeability], summary judgment is inappropriate and the question should be left to a jury."  *White*, 901 F.2d at 1506.

Tulare County contends that the assault on Mr. Carrasquilla was not caused by the execution of any policy, practice or custom.  Instead, Tulare County argues that the assault occurred only "after Deputy Zeller was tricked into providing Mr. Carrasquilla's confidential information concerning his charges in violation of County policies."  (Doc. 39, p. 14).

Plaintiffs counter that Tulare County's classification/housing policy allows for murderers, gang members and inmates charged with violent crimes to be placed in 16-man pods named "protective custody," along with persons charged with child molestation.  MDF 50, 51.  Plaintiffs present evidence that Tulare County chose to house Mr. Carrasquilla together with such inmates despite the availability of alternative options, such as placing him in a single man cell. UMF 21; MDF 57. Plaintiffs further argue that Mr. Carrasquilla's placement with these others was a direct result of Tulare County's policy of classifying some violent inmates, gang members and murderers as "protective custody" inmates while simultaneously maintaining the policy that "[p]rotective custody inmates with PC § 288 (lewd acts on a minor) charges are not automatically segregated from other protective custody inmates unless other factors exist to suggest they cannot be safely housed in a pod." UMF No. 26. Plaintiffs assert that Tulare County's deliberate choices with respect to how it classified protective custody inmates placed Mr. Carrasquilla in a situation where he was surrounded by inmates who would do him harm should they learn what his criminal charges were. Plaintiffs also assert that the fact Defendant Zeller provided Mr. Carrasquilla's charging information to the assailants does not

1   absolve the Tulare County of its responsibility for maintaining a policy which put the inmates and Mr.

2   Carrasquilla together in the first place.

3         Plaintiffs further argue that Ninth Circuit's ruling in *Castro* is instructive.   In *Castro*, the Ninth

4   Circuit found the necessary causal link to support a jury finding that a county's jail custom or policy

5   caused an inmate's injury.   There, the Los Angeles Sheriff's Department detained Jonathan Castro in

6   sobering cell at the West Hollywood police station for his own safety.   Several hours later, officials

7   arrested Jonathan Gonzalez on a felony charge.   Gonzalez was described as acting "bizarre" at the

8   time of his arrest and the intake form characterized him as "combative."   Officials placed Gonzalez in

9   the sobering cell with Castro.   However, the sobering cell at the station did not meet the requirements

10   of the California Building Code, which required both maximum visual supervision of all inmates by

11   staff and that inmates requiring more than minimum security be housed in cells with an inmate or

12   sound-activated audio-monitoring system.   The West Hollywood station policy provided that non-

13   compliant sobering cells should not be utilized.   Within hours of their co-confinement, Castro was

14   severely beaten by Gonzalez and injured.   *Castro*, 883 F.3d at 1064-65.   Following trial, the jury

15   returned a verdict in favor of Castro.   *Id.* at 1066.

16         On rehearing *en banc*, the Ninth Circuit, in evaluating causation, determined that the entity

17   defendants' custom or policy caused Castro's injury.   *Id.* at 1075.   The Ninth Circuit found that "[t]he

18   LASD and the County made deliberate choices *in light* of the poor design and location of the sobering

19   cell" and that "[t]he custom or policy . . . was to use a sobering cell that lacked adequate audio

20   surveillance to detain more than one belligerent drunk person while checking the cell visually only

21   once every half hour."   *Id.* at 1076.   In concluding that substantial evidence supported the jury's

22   finding that this custom or practice caused Castro's injury, the Ninth Circuit reasoned that "[h]ad the

23   entity defendants provided consistent monitoring, or had the entity defendants required Castro and his

24   attacker to be housed in different locations, which were available, [the] attack on Castro could have

25   been averted."   *Id.* at 1075-76.   The Ninth Circuit also considered that "[t]he stated purpose of the

26   sobering cell is the housing of prisoners who are a threat to their own safety. But the absence of

27   frequent visual checks and the lack of audio monitoring clearly made the risk of serious harm to such

28   prisoners substantial."   *Id.*

The Court finds *Castro* distinguishable.  In *Castro*, the Ninth Circuit premised causation on the placement of inmates in a sobering cell that lacked adequate visual checks and audio monitoring. Here, unlike in *Castro*, there was an intervening event following the placement of Mr. Carrasquilla in the protective custody pod with other inmates, namely the disclosure of Mr. Carrasquilla's charges in a kite left on the cell bars by Defendant Zeller.  This disclosure was an intervening event superseding any liability on the part of Tulare County because it was not reasonably foreseeable that Defendant Zeller would violate Tulare County's policy against improper release of confidential information to third parties by failing to ensure that the correct person (Mr. Carrasquilla) actually received the sensitive information. Thus, the intervening event of disclosing Mr. Carrasquilla's charges to other inmates in direct violation of County policy broke the chain of causation and lead to the inmates' subsequent attack.  In light of this intervening event, Plaintiffs have failed to raise a genuine dispute of material fact demonstrating a "*direct* causal link between [Tulare County's] policy or custom and the alleged constitutional deprivation." *City of Canton*, 489 U.S. at 385, 109 S.Ct. at 1203 (emphasis added); *Castro*, 833 F.3d at 1075.  A reasonable jury could not conclude that Defendant Zeller's violation of established policy and disclosure of Mr. Carrasquilla's charges to third parties was reasonably foreseeable.  *White*, 901 F.2d at 1506.

Further, there is no evidence that Mr. Carrasquilla's placement alone, without the intervening event, made the risk of serious harm substantial.  *Castro*, 833 F.3d at 1076 (finding that absence of frequent visual checks and the lack of audio monitoring in sobering cell "clearly made the risk of serious harm to such prisoners substantial").  While Plaintiffs' expert opined that Mr. Carrasquilla should have been "totally segregated . . . and watched and housed accordingly," this opinion is conclusory and lacking in evidentiary support.  Plaintiffs' expert provides no evidence, such as statistics, regarding the number of assaults against child molesters placed in a protective custody pod with other inmates within the Tulare County jail or, more generally, in relation to Tulare County's classification policy.  Instead, the evidence establishes that physical assaults against sex offenders in Tulare County were rare.  UMF 34.  Indeed, Plaintiffs' expert contradicts his conclusion that a child molester must be "totally segregated" in other testimony where he states that there is no prohibition against housing sex offenders with other inmates in a multi-inmate setting if precautions are taken.

1  (Doc. 48-1, Plaintiffs' Ex. 10, Roger Clark's Deposition, p. 56:12-57:8.)

2        Also differentiating this case from *Castro* is that there is no evidence indicating Tulare

3  County's protective custody pods were somehow deficient or lacking in adequate supervision.  Rather,

4  the undisputed evidence demonstrates that Tulare County had increased the level of supervision in the

5  protective custody unit in the main jail by housing inmates in smaller protective custody pods within

6  ear shot of the floor deputy, by providing for visual observation from the bull pen of the corridor,

7  shower area, and shower, and by performing floor checks that exceed state regulations and by training

8  staff to respond to inmate disturbances immediately.  UMF 31. Further, the State of California had not

9  identified any issues or concerns regarding the County's inmate classification policies, practices, and

10  customs during any audit.  UMF 33.  Although Plaintiffs' expert suggests that Mr. Carrasquilla should

11  have been "watched" accordingly or that there should have been "an increased level of supervision,"

12  this suggestion is conclusory and lacking any specificity regarding deficiencies in Tulare County's

13  supervision of inmates in protective custody as required by state regulations.

14        Although the evidence establishes that Tulare County's policy of housing protective custody

15  inmates in a 16-man cell, without segregating detainees charged with child molestation, was a

16  deliberate choice made from various alternatives, there is no direct link between this choice and Mr.

17  Carrasquilla's assault.  Plaintiffs have failed to raise a genuine dispute of fact to suggest that Mr.

18  Carrasquilla's placement in the 16-man cell, as opposed to the intervening event of unauthorized

19  disclosure of Mr. Carrasquilla's charges, was the "moving force" behind the alleged constitutional

20  violation. *City of Canton*, 489 U.S. at 389, 109 S.Ct. 1205; *Castro*, 833 F.3d at 1075.

21              <u>Policy Amounting to Deliberate Indifference</u>

22        Before a local government entity may be held liable under section 1983, a plaintiff must

23  demonstrate that the entity's policy "evidences a 'deliberate indifference' " to his constitutional rights.

24  *City of Canton*, 489 U.S. at 389, 109 S.Ct. at 1205.  This may be found where the need for more or

25  different action "is so obvious, and the inadequacy [of the current policy] so likely to result in the

26  violation of constitutional rights, that the policymakers . . . can reasonably be said to have been

27  deliberately indifferent to the need." *Id.* at 390, 109 S.Ct. at 1205.  The deliberate indifference

28  standard for municipalities is an objective inquiry.  *Castro*, 833 at 1076*.*

1        Tulare County argues that there is no evidence that "the policy of housing sex offenders with

2   other inmates who have also been deemed to be vulnerable to attack, but who are not necessarily sex

3   offenders, as implemented by the County of Tulare was deliberately indifferent to a substantial risk of

4   serious harm." (Doc. 39, p. 15).  To bolster this contention, Tulare County points out that there is no

5   law or statute specifically requiring the segregation of inmates charged with a violation of Penal Code

6   § 288.  (*Id.*)  Further, Tulare County argues that it adopted a comprehensive classification system to

7   identify and separate inmates that posed a substantial risk of serious harm to other inmates and also

8   provided for an increased level of supervision for protective custody inmates.   UMF 18, 31.

9   Additionally, Tulare County argues that nothing in the individuals who were housed with Mr.

10  Carrasquilla established that any of the inmates posed a substantial risk of serious harm to sex

11  offenders.  UMF 38, 40-43.

12       Plaintiffs counter that Tulare County "deliberately maintained – and continues to maintain – a

13  policy of classifying, without distinction, violent inmates and gang members *as well as* inmates and

14  detainees charged with child molestation as 'protective custody' inmates, and housing them together in

15  a 16-man pod."  (Doc. 46, p. 18).  Plaintiffs also point to Tulare County's acknowledgment that

16  Plaintiff was classified as protective custody because Tulare County knew that people charged with

17  molestation are more likely than not to be subjected to physical abuse from the general population,

18  active gang members, and from any other people in the jail who may tend to want to do them harm.

19  MDF 49.  Plaintiffs argue that despite this knowledge, Mr. Carrasquilla was housed with a suspected

20  murderer and several gang dropouts.  MDF 50. Further, there is evidence that Tulare County knew that

21  Mr. Carraquilla's charges placed him at risk of serious harm if that information was released to any

22  inmate.  MDF 52.

23       Having considered the parties' arguments, the Court finds that Plaintiffs have failed to

24  establish a genuine dispute of fact demonstrating deliberate indifference.   In reliance on their expert,

25  Plaintiffs argue that Tulare County's policy evidences deliberate indifference because it does not

26  completely segregate child molesters, individually, or place them with persons similarly charged.

27  However, Plaintiffs have not identified any independent right for an inmate to be so segregated and, as

28  admitted by Plaintiffs' own expert, there is no prohibition against housing sex offenders with other

1   inmates in a multi-inmate setting if precautions are taken.[4]   (Doc. 48-1, Plaintiffs' Ex. 10, Roger

2   Clark's Deposition, p. 56:12-57:8.)

3          Here, the evidence demonstrates that Tulare County took reasonable precautions to protect

4   inmates in its custody by implementing a comprehensive classification system, which Plaintiffs'

5   expert does not otherwise challenge.   The classification system requires consideration of objective

6   criteria, including information obtained from an inmate questionnaire (which it is undisputed Mr.

7   Carrasquilla completed), classification interview, custody behavior and discipline, prior criminal

8   history, and charges, and no single factor or criterion controls housing.   The undisputed facts also

9   indicate that if an inmate is housed with other inmates, the classification officer considers information

10  about the other inmates.   Indeed, the undisputed evidence establishes that Tulare County's

11  classification policy is consistent with state regulations, and takes into account a variety of factors,

12  including whether it is appropriate and safe to house child molesters with other inmates, along with the

13  inmates' attributes to determine if a risk is present.   UMF 18; Def's Ex. 8, Tit. 15, Cal. Code Regs. §§

14  1050, 1053.   The State of California had not identified any issues or concerns regarding Tulare

15  County's classification policies or practices, and there is no dispute that Tulare County complied with

16  its comprehensive classification policy on the day of Mr. Carrasquilla's incarceration.   Based on the

17  classification procedures, the undisputed evidence demonstrates that the jail's staff did not know of

18  any potential danger Inmate Soliz (or any other inmates in protective custody) posed to Mr.

19  Carrasquilla. And, as discussed above, Tulare County maintained an increased level of supervision in

20  the protective custody unit in the main jail, which Plaintiffs have not adequately challenged. The jail

21  therefore had no reason to change their standard classification procedures and supervision on the day

22  of Mr. Carrasquilla's detention.   Thus, a reasonable jury could not find that Tulare County was

23  deliberately indifferent to Plaintiff's right to protected while detained.   *Bremer v. Cty. of Contra*

24

25  [4]          The expert states in broad conclusory terms that Tulare County acted with "callous disregard" for Mr.
    Carrasquilla's safety.  But his opinion boils down to this: a failure of the policy and actions of Tulare County for not
26  separately segregating Plaintiff based on the primary factor of Plaintiff's charges as a child molester.  (Doc. 48-1,
    Plaintiffs' Ex. 11, Expert Report.)  Indeed, at oral argument, counsel argued that an inmate's charge should be a
27  "heightened" factor.  However, Plaintiff "has no constitutional right to a particular classification status," *Hernandez v.
    Johnston*, 833 F.2d 1316, 1318 (9th Cir. 1987), and no constitutional right to be housed in a particular prison unit.  *Id.*  The
28  undisputed evidence is that Tulare County, in fact, considered Plaintiff's charges among other factors in determining where
    to house him.  Therefore, Tulare County did not "know of and disregard" the factor of Plaintiff's charges.

*Costa*, No. 15-CV-01895-JSC, 2016 WL 6822011, at *9 (N.D. Cal. Nov. 18, 2016) ("Ultimately, the objective standard does not require a defendant to take *all* available measures to abate a plaintiff's risk of suffering serious harm.") (emphasis in original).

Based on the foregoing, the Court finds no triable issue of fact as to whether the jail's classification policy and procedures followed on the day of Mr. Carrasquilla's assault were lacking such that "the need [to remedy the classification policy] [was] so obvious, and the inadequacy so likely to result in the violation of constitutional rights ... [that Defendants] can reasonably be said to have been deliberately indifferent to the need." *Castro*, 833 F.3d at 1076 (citation omitted); *Jimenez v. County of Alameda*, Case No. 13-4620, 2016 WL 4446996, at *7 (Aug. 24, 2016).

Accordingly, Defendant Tulare County is entitled to summary judgment on Mr. Carrasquilla's constitutional claim.[5]

## B. Fourteenth Amendment Claim

Plaintiff Alba Lyda Carrasquilla claims that Tulare County interfered in her familial relationship with Mr. Carrasquilla in violation of the Fourteenth Amendment to the United States Constitution. Tulare County argues that Mrs. Carrasquilla's claims are derivative of Mr. Carrasquilla's claims, and she cannot prove that she is entitled to relief because Plaintiffs are unable to establish that Tulare County committed a constitutional violation. The Court agrees. Because Tulare County is entitled to summary judgment on Plaintiffs' *Monell* claim, Tulare County's motion for summary judgment on Mrs. Carrasquilla's related claim shall be granted.

///

///

///

---

[5] Plaintiffs attempt to salvage their *Monell* claim by arguing that Tulare County did not investigate and discipline Defendant Zeller for her disclosure of Mr. Carrasquilla's charging information. (Doc. 46, pp. 20-21). To survive summary judgment on this theory, Plaintiffs must present triable issues of fact on whether a final policymaker deliberately or affirmatively chose to ratify an unconstitutional action. *See Gillette v. Delmore*, 979 F.2d 1342, 1248 (9th Cir. 1992); *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 127, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988) ("If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final."). Here, Tulare County had no knowledge concerning the "kite" allegation against Defendant Zeller until September 2, 2016, when Dale Watson was deposed during the course of this litigation. (Doc. 51, pp. 5-6). Plaintiffs have not presented any evidence demonstrating that Tulare County made an affirmative decision to adopt Defendant Zeller's actions.

**V.  Conclusion and Order**

      For the reasons explained, Defendant Tulare County's motion for summary judgment is HEREBY GRANTED.

IT IS SO ORDERED.

Dated:  __**December 27, 2016**__         _____/s/ _Barbara A. McAuliffe_____
                                      UNITED STATES MAGISTRATE JUDGE