# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS CARRASQUILLA, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> COUNTY OF TULARE, et al., <br><br> Defendants. <br> _____/ | Case No. 1:15-cv-00740-BAM <br><br> ORDER REGARDING DEFENDANT STACEY ZELLER JOHNSON'S MOTION FOR SUMMARY JUDGMENT <br> (Doc. 38) |

Plaintiffs Carlos Carrasquilla and Alba Lyda Carrasquilla ("Plaintiffs") filed this civil rights action pursuant to 42 U.S.C. § 1983 against Defendants County of Tulare ("Tulare County") and Stacey Zeller Johnson ("Defendant Zeller") (sued as DOE 1 (Zeller) and DOE 6 (Johnson)) on May 13, 2015.[1] (Doc. 1). The parties consented to the jurisdiction of the United States Magistrate Judge. (Docs. 12, 13, 53).

Presently before the Court is a motion for summary judgment brought by Defendant Zeller. (Doc. 38). Plaintiffs' operative claims against Defendant Zeller include a claim for failure to protect Mr. Carrasquilla from injury at the hands of other inmates in violation of the Fourteenth Amendment to the United States Constitution, Mr. Carrasquilla's state law claim for intentional infliction of emotional distress, and Mrs. Carrasquilla's claim for interference with her marital relationship with Mr. Carrasquilla in violation of the Fourteenth Amendment. Plaintiffs opposed the motion for

---

[1] Defendants Anderson, Garcia, Vargas and Salgado, the remaining defendants, were dismissed from this action with prejudice on November 22, 2016. (Doc. 45).

1

summary judgment on November 23, 2016, and Defendant Zeller replied on December 2, 2016. (Docs. 47, 50). The Court heard oral argument on December 15, 2016. Counsel Brian Bush appeared by telephone on behalf of Plaintiffs Carlos Carrasquilla and Alba Lyda Carrasquilla. Counsel Judith Chapman appeared by telephone on behalf of Defendant Tulare County. Counsel William Bruce and Ravi Patel appeared by telephone on behalf of Defendant Zeller.

Having considered the moving, opposition and reply papers, and the parties' arguments, Defendant Zeller's motion for summary judgment shall be DENIED.

## I. Motion for Summary Judgment - Legal Standard

Summary judgment is appropriate when the pleadings, disclosure materials, discovery, and any affidavits provided establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that may affect the outcome of the case under the applicable law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The exact nature of this responsibility, however, varies depending on whether the issue on which summary judgment is sought is one in which the movant or the nonmoving party carries the ultimate burden of proof. *See Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). If the movant will have the burden of proof at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Id.* (citing *Celotex*, 477 U.S. at 323). In contrast, if the nonmoving party will have the burden of proof at trial, "the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Id.*

If the movant satisfies its initial burden, the nonmoving party must go beyond the allegations in its pleadings to "show a genuine issue of material fact by presenting affirmative evidence from which a jury could find in [its] favor." *FTC v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009) (emphasis

omitted). "[B]ald assertions or a mere scintilla of evidence" will not suffice in this regard. *Id.* at 929; *see also Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56[], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.") (citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

In resolving a summary judgment motion, "the court does not make credibility determinations or weigh conflicting evidence." *Soremekun*, 509 F.3d at 984. Instead, "[t]he evidence of the [nonmoving party] is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Anderson*, 477 U.S. at 255. Inferences, however, are not drawn out of the air; the nonmoving party must produce a factual predicate from which the inference may reasonably be drawn. *See Richards v. Nielsen Freight Lines*, 602 F.Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

In arriving at the findings and rulings in this opinion, the Court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this Court did not consider the argument, document, paper, or objection. This Court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

**II.      Undisputed Material Facts** ("UMF")[2]

In July 2014, Plaintiff Carlos Carrasquilla was arrested pursuant to a warrant on charges under California Penal Code section 288. UMF 1. Mr. Carrasquilla was housed in a unit within the jail with approximately 16 other inmates. UMF 2. In the unit in which Mr. Carrasquilla was housed, inmates communicate with guards and administrators through written notes placed on the cell bars known as

---

[2] The facts detailed here are taken from the parties' joint statement of undisputed facts (Doc. 38-2), and construed in the light most favorable to Plaintiffs. *Horphag Research Ltd. v. Garcia*, 475 F.3d 1029, 1035 (9th Cir. 2007). Material disputed and undisputed facts are discussed in detail where relevant to the Court's analysis of a specific cause of action. Unless otherwise noted, any objections to evidence are overruled.

3

"kites." UMF 3.

On or about July 20, 2014, one or more inmates in Mr. Carrasquilla's unit wrote a kite identifying himself or themselves—by name and inmate identification number—as Mr. Carrasquilla. UMF 4. The kite was not written by Mr. Carrasquilla. UMF 5. The kite, purporting to be from Mr. Carrasquilla, requested the identification of the charges against Mr. Carrasquilla. UMF 6. Defendant Deputy Stacey Zeller Johnson collected the kite. UMF 7. Defendant Zeller provided a written response to the kite that indicated that Mr. Carrasquilla was being held on a charge related to child molestation. UMF 8. Defendant Zeller's written response to the kite was collected by an inmate other than Mr. Carrasquilla. UMF 9. Soon after Defendant Zeller's written response to the kite, Mr. Carrasquilla was attacked by one or more fellow inmates, apparently because the attacker(s) had discovered that Mr. Carrasquilla was accused of child molestation. UMF 10.

### III.     Plaintiffs' Separate Statement ("PSF")[3]

It is common knowledge that inmates charged with child molestation, like Mr. Carrasquilla, are more likely to be subjected to physical abuse than other inmates. PSF 11. Because of this known risk of injury to such "vulnerable" inmates (including those charge with sex crimes against children), Tulare County established policies as to which employees like Defendant Zeller were trained, that included the rights of said inmates to be safe from abuse and punishments, the right of said inmates to be "protected" from abuse. It was the policy of Tulare County that "every reasonable effort to protect" said inmates was to be undertaken. PSF 12. Deputies are trained not to disclose inmate charges to other inmates. Defendant Zeller knew and understood this as part of her duties and training. PSF 13.

There is a known hierarchy among jailers, like Tulare County, that sex offenders, in particular sex offers against minors, are more likely to be subject to beatings and abuse, i.e., jailhouse justice. Accused child molesters become a target for such inmates. Defendant Zeller was aware of this hierarchy. PSF 14. Defendant Zeller was aware of this hierarchy that at the very bottom and most subject to abuse and beatings would be the sexual predators. She had been thoroughly trained to know and understand this hierarchy and the placement of the child molester at the vulnerable position at the

---

[3]     The facts detailed here are taken from Plaintiffs' Separate Statement of Material Disputed Facts (Doc. 47-4), and Defendant Zeller's reply (Doc. 50-1).

bottom of that hierarchy. PSF 15.

General population included murderers, people charged with murder, other violent crimes, crimes against law enforcement, gang members who often have order to place a hit on inmates accused of child molestation. PSF 16. The 16-man tank into which Mr. Carrasquilla was placed included the very type of inmate which comprised the general population, i.e., murderers, gang members and a variety of other violent crimes. Defendant Zeller was aware of this. PSF 17. The information known to the Tulare County Jail was that Mr. Carrasquilla's charges included lewd acts upon a child. He was on a "county hold" meaning he was to be held until transferred to L.A. County. Defendant Zeller, from training and experience, knew that Mr. Carrasquilla's charges included lewd acts upon a child. PSF 18. Mr. Carrasquilla's jacket, which included those charges, was to be kept in the intake office. Defendant Zeller knew this. PSF 19. With knowledge as to the risks posed by the inmates in Mr. Carrasquilla's cell should they discover or be made aware of his charges, Defendant Zeller, known to the inmates as a deputy who regularly responded to kites, left the kite on the cell bars where there was nothing stopping other inmates from taking and reading kites that were left. PSF 20. Because only the intake deputies would have the inmate's jacket with the specific charges, Defendant Zeller had to have deliberately sought out the requested information to provide the inmates. PSF 21. After the assault on Mr. Carrasquilla, Defendant Zeller conducted an investigation, and took statements from each inmate/witness. PSF 22. The kite disclosing Mr. Carrasquilla's status as an accused child molester was not mentioned in Defendant Zeller's report. PSF 23. It would be one of the most serious breaches of jailhouse security for inmates to obtain a document listing another inmate's charges and bail amount. PSF 24. Defendant Zeller's report did not discuss the kite. Her supervising Sergeant did not investigate the kite. Defendant Zeller was not punished for the kite. PSF 25.

Plaintiff suffered severe injuries, including a comminuted right maxillary sinus acute fracture, comminuted right zygomatic arch fracture, right and left nasal bone fracture with nasal septal deviation to the right, right lateral orbital wall fracture and inferior frontal sinus depressed fracture. PSF 26.

///

## IV. Discussion

### A. Fourteenth Amendment – Failure to Protect

Defendant Zeller initially argues that she is entitled to summary judgment on Mr. Carrasquilla's failure-to-protect claim based on an Eighth Amendment deliberate indifference standard. (Doc. 38, pp. 10-13). However, a pretrial detainees' failure-to-protect claim arises under the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment's Cruel and Unusual Punishment Clause. *Kingsley v. Hendrickson*, --- U.S. ---, 135 S.Ct. 2466, 2475, 192 L.Ed.2d 416 (2015); *Castro v. County of Los Angeles*, 833 F.3d 1060, 1069-70 (9th Cir. 2016) (en banc).

"Jailers have a duty to protect pretrial detainees from violence at the hands of other inmates." *Castro*, 833 F.3d at 1070. To establish a violation of this duty, a plaintiff must "show that the prison officials acted with deliberate indifference." *Castro*, 833 F.3d at 1068. The elements of a pretrial detainee's Fourteenth Amendment failure-to-protect claim against an individual officer are as follows:

> (1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined;
>
> (2) Those conditions put the plaintiff at substantial risk of suffering serious harm;
>
> (3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and
>
> (4) By not taking such measures, the defendant caused the plaintiff's injuries.

*Castro*, 833 F.3d at 1071. "With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily turn on the facts and circumstances of each particular case." *Id.* (citations and quotations omitted); *see also Weishaar v. County of Napa*, No. 14-cv-01352-LB, 2016 WL 7242122, *7, (N.D. Cal. Dec. 15, 2016) (citing *Castro*, 833 F.3d at 1069-70) ("The 'deliberate indifference' test under the Due Process Clause of the Fourteenth Amendment is . . . 'purely objective.'"). Under this test, "a pretrial detainee who asserts a due process claim for failure to protect" must "prove more than negligence but less than subjective intent—something akin to reckless disregard." *Castro*, 833 F.3d at 1071.

In her moving papers, Defendant Zeller argues that the evidence demonstrates that she was

6

deceived into revealing Mr. Carrasquilla's status and had no knowledge of any risk of harm to him. In particular, Defendant Zeller contends that there is an absence of any evidence that she knew Mr. Carrasquilla's status was being improperly disclosed. Rather, Defendant Zeller contends that the evidence, based on testimony from Inmate Dale Watson, demonstrates that the inmates sought to trick her into believing that the kite came from Mr. Carrasquilla. (Doc. 38, pp. 11-12.) Defendant Zeller further argues that there is no evidence that she was aware of facts that could have led her to believe that her response to the note would put Mr. Carrasquilla in danger "because she had no knowledge that one or more of the inmates had impersonated Carrasquilla in writing the kite." (*Id.*) Defendant Zeller essentially asserts that she was used by an inmate with violent intentions to execute a plan of abuse on a fellow inmate. (*Id.* at 12-13). Defendant Zeller claims she did not draw any inference that her response to the kite could harm Mr. Carrasquilla.

In opposition, Plaintiffs argue that Defendant Zeller has misstated the law and improperly applied an Eighth Amendment standard to Mr. Carrasquilla's failure-to-protect claim. Applying the appropriate Fourteenth Amendment standard, as outlined above, Plaintiffs contend that there are genuine disputes of material fact as to whether Defendant Zeller acted with deliberate indifference when she provided Mr. Carrasquilla's charging information. Specifically, Plaintiffs assert that the undisputed facts demonstrate that Defendant Zeller performed an intentional act by collecting the kite and writing a response that was collected by an inmate other than Mr. Carrasquilla. UMF 7-9. Plaintiffs argue that Defendant Zeller's actions were unreasonable in light of her awareness of the significant risk of injury facing persons charged with child molestation in the jail and her training that "every reasonable effort to protect" said inmates was to be undertaken. PSF 12, 13. She also was aware that inmates charged with child molestation are the most likely to be subjected to beatings at the hands of other inmates. PSF 14, 15. Additionally, Plaintiffs contend that Defendant Zeller knew that Mr. Carrasquilla was charged with lewd acts upon a child, and thus, was at the highest risk of suffering a beating by other inmates should they become aware of his charges. PSF 15, 18. She also knew and was trained not to dispense an inmate or detainee's charging information to other inmates. PSF 13. Plaintiffs argue that despite her knowledge and training, Defendant Zeller disclosed sensitive information by leaving the kite on the cell bars where there was nothing stopping other inmates from

taking and reading it.  PSF 20.  Plaintiffs conclude that these facts raise triable issues as to whether Defendant Zeller acted with deliberate indifference when she disclosed Mr. Carrasquilla's charging information.

In her reply, Defendant Zeller responds that the only condition that created a risk for Mr. Carrasquilla was the disclosure of his status as an accused child molester.  Defendant Zeller argues that she made no intentional decision with respect to the disclosure, having no idea that she was making a disclosure to anyone other than Mr. Carrasquilla.  Further, Defendant Zeller argues that she showed no intent to create the condition that ultimately caused harm to Mr. Carrasquilla, and another officer in her circumstances would not have recognized a risk of harm.  (Doc. 50, p. 6).

The Court finds questions of fact precluding summary judgment in favor of Defendant Zeller on Mr. Carrasquilla's failure-to-protect claim.  There is a question of fact whether Defendant Zeller took reasonable precautions to abate the risk of disclosure of the sensitive information.  Plaintiffs have presented evidence demonstrating that Defendant Zeller provided Mr. Carrasquilla's charging information in a kite left on the cell bars.  Defendant Zeller did so knowing not only that the kite could have been collected by any inmate, but also that persons charged with child molestation or a sex crime against a minor are at risk of being beaten by other inmates if the charges are discovered.  She did not call Mr. Carrasquilla over to collect the kite or otherwise ensure that sensitive information was given only to the appropriate person.  The evidence also demonstrates that Defendant Zeller failed to disclose her role in providing the kite prior to the assault on Mr. Carrasquilla.  Although Defendant Zeller argues that she did not expect any harm to result from placing the kite on the bars, she has not provided a declaration in support of her motion for summary judgment.  Further, the standard at issue is an objective one.  On the present facts, a jury could find that "a reasonable officer in [these] circumstances would have appreciated the high degree of risk involved" by leaving the kite with Mr. Carrasquilla's charges on the cell bars and the "failure to take reasonable measures" to ensure that the kite was not collected by an inmate other than Mr. Carrasquilla "caused [Mr. Carrasquilla's] injuries." *Castro*, 833 F.3d at 1072.  In other words, a reasonable jury could conclude that Defendant Zeller's actions, in the circumstances, were "objectively unreasonable." *Castro*, 833 F.3d at 1071.

**B. Qualified Immunity**

Defendant Zeller next argues that she is entitled to qualified immunity because her conduct did not violate a clearly established constitutional right.

Qualified immunity protects government officials from civil liability for damages if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). In resolving a government official's qualified immunity claim, a court must evaluate two questions: (1) whether the official's conduct violated a constitutional right, and (2) whether that right was "clearly established" at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009).

Defendant Zeller argues that the constitutional right at issue must be defined narrowly, and that the right at stake here is the right to keep sensitive charging information confidential from fellow inmates. Defendant Zeller contends that there is no law that clearly establishes this right as constitutionally protected. (Doc. 38 at pp. 13-14).

Plaintiffs counter that this is an "absurd construction" of Mr. Carrasquilla's well-established right as a pretrial detainee to be free from violence at the hands of other inmates while incarcerated. (Doc. 47, p. 19). Plaintiffs further counter that the Ninth Circuit rejected a similarly narrowed description in *Castro*, 833 F.3d at 1067, which involved a pretrial detainee, Jonathan Castro, suing Los Angeles County Sheriff's officials under section 1983 for violating his due process right as a pretrial detainee to be protected from harm at the hands of other inmates. In that action, Mr. Castro had been arrested and subsequently detained in a sobering cell at the police station in 2009. The sobering cell was not equipped with audio monitoring and was checked only sporadically. Several hours later, officials placed Jonathan Gonzalez, a combative inmate who had been arrested on a felony charge, in the same cell. After Inmate Gonzalez was placed in the cell, Mr. Castro attempted to attract an officer's attention, but no one responded. Within hours of their co-confinement, Mr. Castro was severely beaten and injured at the hands of Inmate Gonzalez. *Id.* at 1064.

Although jail officials in *Castro* acknowledged the right of a pretrial detainee to be free from violence from other inmates, they argued that "such a broad description" was "too general to guide

9

1   [the court's] analysis." *Id*. The Ninth Circuit disagreed, finding that the right at issue was the "right to

2   be free from violence at the hands of other inmates." *Id*. In so doing, the Ninth Circuit reasoned as

3   follows:

> [A] right is clearly established when the "contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Serrano v. Francis*, 345 F.3d 1071, 1077 (9th Cir. 2003) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). The "contours" of Castro's right were his right to be free from violence at the hands of other inmates. *Farmer*, 511 U.S. at 833, 114 S.Ct. 1970. The Supreme Court need not catalogue every way in which one inmate can harm another for us to conclude that a reasonable official would understand that his actions violated Castro's right. Nor do the official's actions, in this context, require some affirmative act. As we held months before Castro's arrest, "direct causation by affirmative action is not necessary: 'a prison official may be held liable under the Eighth Amendment if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.' " *Clem v. Lomeli*, 566 F.3d 1177, 1182 (9th Cir. 2009) (ellipsis omitted) (quoting *Farmer*, 511 U.S. at 847, 114 S.Ct. 1970). The contours of the right required only that the individual defendants take reasonable measures to mitigate the substantial risk to Castro. Accordingly, we reject the individual defendants' argument that the law on which Castro bases his claim was not clearly established at the time of the incident. Therefore, qualified immunity does not bar the claim against them.

*Id.*

The Court finds the analysis of *Castro* instructive, and that the "contours" of Mr. Carrasquilla's right involved the right to be free violence at the hands of other inmates. *Id*. As found in *Castro*, a pretrial detainee's right to be free from violence from other inmates was clearly established well before Mr. Carrasquilla's arrest in July 2014. Indeed, more than twenty years before Mr. Carrasquilla's arrest and detention, the Supreme Court expressly held that under the Eighth Amendment "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners" because they have "stripped [the inmates] of virtually every means of self-protection and foreclosed their access to outside aid." *Farmer v. Brennan*, 511 U.S. 825, 833, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). The Supreme Court also clearly held, well before Mr. Carrasquilla's arrest and detention, that the due process rights of a pretrial detainee are "at least as great as the Eighth Amendment protections available to a convicted prisoner." *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983).

Defendant Zeller does not appear to dispute that Mr. Carrasquilla's right to be free from

violence at the hands of fellow inmates was clearly established before Mr. Carrasquilla's arrest and detention in the Tulare County Jail. (Doc. 38, p. 15). Instead, Defendant Zeller attempts to argue that her conduct in responding to the kite did not violate Mr. Carrasquilla's constitutional right. (Doc. 38, p. 16). Because there are triable issues of fact as to whether Defendant Zeller's conduct violated Mr. Carrasquilla's constitutional right, the Court finds that Defendant Zeller is not entitled to qualified immunity on Mr. Carrasquilla's failure-to-protect claim.

### C. Fourteenth Amendment – Interference with Marital Relations

Plaintiff Alba Lyda Carrasquilla claims that Defendant Zeller interfered in her familial relationship with Mr. Carrasquilla in violation of the Fourteenth Amendment to the United States Constitution. Defendant Zeller argues that this claim is subject to summary judgment because Plaintiffs cannot establish the underlying constitutional violation, i.e., Mr. Carrasquilla's failure-to-protect claim. (Doc. 38, pp. 17-18). Because triable issues of fact preclude summary judgment on Mr. Carrasquilla's failure-to-protect claim, Defendant Zeller's motion for summary judgment on Mrs. Carrasquilla's related claim shall be denied.

### D. Intentional Infliction of Emotional Distress

Defendant Zeller argues that Mr. Carrasquilla's claim for intentional infliction of emotional distress fails because she demonstrated no intent to inflict injury.

To establish a claim for intentional infliction of emotional distress under California law, a plaintiff must show: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. *Christensen v. Super. Ct.*, 54 Cal.3d 868, 903 (1991). Conduct is considered outrageous where it is "so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Davidson v. City of Westminster*, 32 Cal.3d 197, 259 (1982). "The tort calls for intentional, or at least reckless conduct—conduct intended to inflict injury or engaged in with the realization that injury will result." *Id.* at 210 (upholding a finding of "no reckless disregard" in IIED claim because officers' conduct "was in no way due to any affirmative misconduct.")

11

Defendant Zeller contends that none of the evidence in the record indicates that she acted with any intent to injure Mr. Carrasquilla. Instead, Defendant Zeller asserts that while she may have been deceived into providing Mr. Carrasquilla's charges to other inmates, there is no reason to believe that she did so with any intent to harm Mr. Carrasquilla. (Doc. 38, p. 17).

Plaintiffs counter that they have produced evidence from which a reasonable juror could conclude that Defendant Zeller purposefully responded to the kite knowing that by doing so Mr. Carrasquilla would be beaten. Plaintiffs contend that Defendant Zeller received the kite, retrieved the information regarding Mr. Carrasquilla's charges, and then returned the kite bearing the charging information to the cell bars knowing it could be retrieved by any inmate. Plaintiffs argue that Defendant Zeller did so despite knowledge as to the risks posed by the inmates in Mr. Carrasquilla's cell should they discover or be made aware of his charges. Plaintiffs also point to evidence that Defendant Zeller did not mention the kite disclosing Mr. Carrasquilla's status as an accused child molester in her report following her investigation into the beating of Mr. Carrasquilla. PSF 23. Plaintiffs argue that Defendant Zeller acted intentionally in answering the kite, and it is in genuine dispute whether she did so to help see Mr. Carrasquilla suffer punishment at the hands of his fellow inmates.

Here, there is evidence before the Court raising triable issues whether Defendant Zeller acted with reckless disregard of the probability of cause harm. *See generally Little v. Stuyvesant Life Ins. Co.*, 67 Cal.App.3d 451, 462 (1977). The Court finds, at a minimum, that Defendant Zeller knew Mr. Carrasquilla, by virtue of his child molestation charges, was at risk of a beating or other harm if his cellmates should discover or be made aware of those charges. PSF 14, 15, 18. Despite this knowledge, Defendant Zeller left the kite with Mr. Carrasquilla's charging information on the cell bars where any inmate could retrieve it. PSF 20. She violated known police policy and practice of not disclosing confidential information. Soon after Defendant Zeller's response, Mr. Carrasquilla was attacked. UMF 10. Thereafter, and for unknown reasons, Defendant Zeller failed to disclose in her investigation report that she provided a kite with written information regarding Mr. Carrasquilla's charges just prior to the attack. UMF 10, PSF 23. Given these facts, the Court finds that there is genuine dispute as to whether Defendant Zeller acted intentionally, or at least recklessly, with the

12

realization that injury would result from disclosure of Mr. Carrasquilla's charges.  Defendant Zeller is therefore not entitled to summary judgment Mr. Carrasquilla's claim for intentional infliction of emotional distress.

**V.     Conclusion and Order**

For the reasons explained, Defendant Stacey Zeller Johnson's motion for summary judgment is HEREBY DENIED.

IT IS SO ORDERED.

Dated:   **December 27, 2016**          /s/ *Barbara A. McAuliffe*
                                        UNITED STATES MAGISTRATE JUDGE